The opinion of the court was delivered by
Breaux, J.
The plaintiff, alleging that he is the owner of two checks, one for one thousand dollars, the other for five hundred dollars, the last subject to a credit of two hundred dollars, brought suit upon them to enforce payment. He avers that these checks were presented to the bank for payment, and that payment was refused for want of funds to the drawer’s credit. That the firm by whom they were drawn, composed of H. Legendre and Pierre H. Legendre, was dissolved at the former’s death, in August, 1894. Joseph H. Legendre intervened in the suit and alleged that he and Pierre H. Legendre composed the firm of H. Legendre & Co. since the death .of H. Legendre.
The other, P. H. Legendre, denied the averment of plaintiff’s petition, and specially alleged in his answer that the firm was dissolved, and that he was the liquidator; that as brokers and confidential agents of the plaintiff, they had managed financial transactions of which they had furnished him statements; that the checks sued upon were parts of these transactions, for which he has received full credit, and which he should have long since returned in compliance with their request.
That in these different transactions the plaintiff remained indebted to them in the sum of nineteen thousand four hundred and seventy-five dollars and forty-four cents, for which they claim judgment-Plaintiff discontinued his suit as to the check of five hundred dollars.
*1019 The District Court rendered a judgment in favor of the plaintiff for the sum of one thousand dollars, and dismissed the demand of the defendants as in case of wow-suit.
From the judgment the defendants appeal.
Plaintiff and defendants exchanged cheeks on the 8th day of September, 1892. It was a matter of accommodation between them. The plaintiff promised to wait a few days before presenting the check he held for payment.
The defendants as brokers (among their many transactions for plaintiff) made two sales, the first on March 20, 1892; it was, in broker’s parlance, a sale short, seller’s option, to Isidore Newman for plaintiff’s account, one hundred shares of the stock of the New Orleans & Carrollton Railroad Company, deliverable in six months.
The plaintiff admits the first sale as having been contracted for his account, but he earnestly denies that he authorized the second sale. The defendant, Joseph H. Legendre, insists that he made the sale as broker for his (plaintiff’s) account, and that he paid the check in question by depositing a margin. The testimony is conflicting. The defendants earnestly contend that they were authorized to effect the sale, and that having previously deposited margins with the purchaser, in compliance with the contract of sale for plaintiff’s account, they paid over to the purchaser an amount of one thousand dollars on the day agreed upon for the payment .of the cheek.
In making the purchase the name of plaintiff was not mentioned.
We quote from the testimony of the plaintiff:
Q. Be kind enough to state precisely what took place between you and Mr. Legendre, in regard to the matter — the first knowlege you had about it — how did he come to do it ?
A. By his sending me a notice at the time in 1892.
The witness states, in addition, that he informed the defendant, Joseph H. Legendre, that this sale was unauthorized, and did not bind him. The testimony of this defendant is not corroborated. Aside from the conflicting testimony of the plaintiff and this defendant, there is no testimony regarding the alleged sale on the floor of the exchange. All that this defendant affirms about this sale is denied by the plaintiff.
We can not, upon such conflicting testimony, conclude that there was a sale. There were two contracts. It was to secure the last, however (the defendants testify), that the deposit of one thousand *1020 dollars was made. The evidence is that it was deposited to secure the last sale, which sale we have just determined is not supported by proof.
We think that it is equally as conclusive that the margins alleged to have been deposited with Isidore Newman, the purchaser, were not deposited to secure the first contract of sale, for the reason that it would have been out of all proportion to the fall in value of the stock, when account is taken of prior deposit, made to secure plaintiff’s interest in the first contract.
The amount of loss on the first of these sales was: New Orleans & Carrollton Railroad contract, one thousand one hundred and seventy-three dollars and seventy-six cents. The deposits, it is asserted, called (by the purchaser of these shares) from the defendants, was four thousand two hundred dollars; balance, three thous- and and twenty-six dollars and twenty-four cents larger than losses.
There was, therefore, no necessity to add the last one thousand dollars to that margin, if these margins were called to secure both sales, as we have reason to believe they were, although it was not proved that they were for the account of the plaintiff.
The loss oil the second sale (the sale plaintiff testifies was not authorized) was .................................................................................................... $2,936 70
First sale.............................................................................................. 1,173 76
Total loss on hoth sales...................................................................... $4,110 46
Margin........................................................................................................... $4,200 00
Still leaving in excess of margin over loss.................................................. $89 54
We are not informed that there was a remittance of eighty-nine dollars and fifty cents made by the purchaser, Isidore Newman, of amount of surplus of remittance over loss.
In any point of view, keeping account of the first sale, the whole of the last payment of one thousand dollars was not applied to the margin or loss on the last sale.
We are not impressed by the importance the defendants’ seek to give to an account identified in evidence by the letter “ A.” The entry of the account to which our attention is directed, reads: “ September 17, by margins deposited, one thousand dollars.” And it is invoked as notice to the plaintiff, that one thousand dollars was applied to the margin in the last contract and in satisfaction of plaintiff’s check. It is a brief reference to a margin, without any mention whatever of a check or sale.
*1021 The defendants say that as plaintiff’s brokers and agents they bought stocks, bonds and other values for him; they accepted delivery, borrowed money on them, divided the stocks and pledged it as occasion demanded to carry on his speculation; that he never saw one-tenth of these securities, amounting to as much as two hundred thousand dollars a year. In view of these extensive dealings, the entry was not notice of the payment of a check.
We have noted, supra, that the liquidator, representing the defendant partnership and one of the partners as intervenor, claims the sum of nineteen thousand four hundred and seventy-five dollars and forty-four cents in reeonvention.
The largest item of this alleged indebtedness consists of a purchase by the defendant for account of plaintiff of one hundred and forty shares of the People’s Bank stock, about December, 1891. In purchasing,’ the defendant’s put up nearly five thousand dollars in addition to plaintiff’s margin.
These shares were pledged by the defendants upon their own notes and in their name.
We are informed by the record that brokers carry contracts in this manner; in their own names for account of their clients.
Subsequently the pledgee of the defendants, Glandot, transferred the stock to his own name for his security and to collect the dividends on the shares and apply to the payment of defendants’ note, secured as to its payment by this pledge.
This transfer of the lender, also, it seems, has the sanction of custom.
We infer from the testimony that in these dealings among speculators and brokers, although the transactions are conducted in the name of the brokers, and although frequently the lender, as here, transfers the property pledged to his own name, yet it is understood that at a stated time the broker will control the investment.
The loan to the defendants was secured by other shares, as well as by the People’s Bank stock.
It is not manifest that the firm now dissolved can deliver these shares. In any event, it is not in proof that the defendants ever called on plaintiff to take up this stock, or that a tender was ever made.
At least the former was a condition precedent to a suit, and we think that under the circumstances even the tender was a requisite.
*1022 We have thus far treated this item as separate and independent of the others, But there are a number of items; some are admitted correct by the plaintiff, and others are admitted by the defendants; it follows that a tender of shares covered by one item (Peoples Bank stock, for instance), will not suffice, but that a settlement should be made of all the transactions, based upon the respective rights of the plaintiff and of the defendants.
The judgment of the lower court left these questions open for future settlement. We think it does justice between the parties.
It is affirmed, at appellants’ costs.